## NASH *v.* H. R. GLADDING CO.

1. CONTRACT OF EMPLOYMENT—BREACH—EVIDENCE—WILLINGNESS TO PERFORM.

   Testimony by an employé, as to his willingness to continue his services, is immaterial in an action to recover wages for the balance of a contract period in which he performed no work, where it is not claimed that he expressed such willingness to the employer.

2. SAME—SALE OF EMPLOYER'S BUSINESS.

   An employé is not justified in assuming that his contract of employment has been abrogated from the fact that the stock and business of his employer have been sold on execution.

Error to Wayne; Lillibridge, J. Submitted October 21, 1898. Decided November 15, 1898.

118 MICH.—34.

*Assumpsit* by George R. Nash, assignee of Howard R. Gladding, against the H. R. Gladding Company, for the breach of a contract of employment. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*Bacon & Palmer*, for appellant.

*Jasper C. Gates*, for appellee.

LONG, J. This case was commenced in justice's court, where plaintiff recovered a judgment for $350. Defendant appealed to the circuit court, where, on a trial before a jury, the court directed verdict in favor of defendant. The plaintiff is the assignee of a claim which Howard R. Gladding made against the defendant under the following contract:

"This agreement, made this 30th day of March, 1893, between Howard R. Gladding, of the first part, and H. R. Gladding Company, of the second part, witnesseth: That the said Howard R. Gladding agrees faithfully and diligently to work for the said H. R. Gladding Company as its manager at Detroit, Wayne county, Michigan, for a period of one year from the date hereof, for the sum of $15 per week, and the further annual payment of a sum equivalent to the dividends which would have accrued on 50 shares of stock in the said corporation for one year from the date hereof, said sum to be the same as the annually declared dividends. In consideration of which service so to be performed, the said H. R. Gladding Company agrees to pay the said Howard R. Gladding the said sum of $15 per week, and the annual payment of a sum equivalent to the dividend which would have accrued on 50 shares of its stock.

"In witness whereof, said parties have hereunto set their hands and seals, the day and year first above written.

"H. R. GLADDING.      [L. S.]
"H. R. GLADDING COMPANY,      [L. S.]
          "By STEPHEN A. PRATT, Pres."

Upon the execution of this contract, Howard R. Gladding entered upon the performance of his duties as man-

ager for the defendant, and continued in that capacity until October 17, 1893, at which date the stock and business of the company were sold by the sheriff, and purchased by Stephen Pratt, the father of the president of the Gladding Company; and upon such sale defendant ceased to do business. Gladding did no work for the company after the sale, and received no further pay. After the expiration of the year, he assigned his demand to the plaintiff, who now seeks to recover the salary for the balance of the year from October 17, 1893.

It was the contention of the defendant on the trial that the plaintiff had made no case to go to the jury. The court below instructed the jury:

"There is no evidence in the case that this plaintiff [meaning plaintiff's assignor] was discharged by the defendant from his employment. The only testimony on that point is that on October 17th the property of the defendant was sold by the sheriff, and that this plaintiff then disappeared from his place of business, and did not return to continue or offer his services, and that, although he frequently met the president of the company, he never expressed to him his willingness to perform the services under the contract, or asked pay from him for services under the contract. There is no evidence in this case that the plaintiff was discharged by defendant company. That being a material point for the plaintiff to establish. I charge you he cannot recover under the evidence."

We think this charge was proper, under the testimony given by the plaintiff's assignor. He was produced as a witness for the plaintiff, and gave no testimony that he was discharged by the defendant company. It appeared that the accounts kept by him were in a somewhat confused state, the ledger balances being many times forced by the charge of the balances to profit and loss. The president of the company, after October 17, 1893, had several talks with Mr. Gladding about the accounts; but at no time does it appear from Gladding's testimony that he offered to continue his services to the company, nor does it appear that the company was not in a financial

condition to continue the employment and pay him for his services. It would seem that he quit of his own volition, and never offered to continue his services. Three years thereafter he assigned this claim, and then for the first time a demand was made for pay for the time which he had never expended for the company.

In *Collins* v. *Hazelton*, 65 Mich. 220, it appeared that defendant's foreman had told the plaintiff that defendant did not want him to work any longer. The foreman had no authority to discharge the plaintiff. Plaintiff had been paid monthly. He did not claim his pay at the usual time, and said nothing to defendant about it. In reversing the judgment in favor of the plaintiff, it was said:

"He was bound to show actual authority from Hazelton for his discharge, or actual knowledge and approval of his discharge. * * * He was also bound to see that Hazelton had knowledge that he refused to acquiesce in his discharge, and that he proposed to hold himself ready at all times to resume his labor. * * * A person who proposes to put his employer in the wrong must take sufficient pains to prevent any reasonable misapprehension of his pretentions."

Here the case is much stronger. The plaintiff does not pretend to have received, and made no offer to show, a discharge of Gladding, or that he ever offered to resume his work for the company after October 17th. The fact that the property of the company was levied upon and sold by the sheriff did not justify Mr. Gladding in treating the contract as abrogated, or in assuming, under the facts shown here, that the defendant could not carry out its contract, as there was no showing that the company was insolvent, or that it might not have been able to procure him a place with Mr. Pratt, who became the purchaser of the property, and thereafter carried on the business. Apparently, he quit the business of his own accord, and never after that inquired whether his services were needed. It is true that plaintiff's counsel, on the examination of Gladding as a witness on the trial, asked

him to state whether or not he was willing to carry out the contract for the balance of that period, and the court ruled it out. But this was not an inquiry as to his tender of services, and his willingness to carry it out would not aid the plaintiff unless he expressed that willingness to the defendant. Mr. Gladding's willingness to perform the services should have been expressed to the defendant, and no claim is made that it was.

The judgment must be affirmed.

The other Justices concurred.